# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LIVERY COACH SOLUTIONS, L.L.C., | : |
| Plaintiff, | : |
| v. | : Civ. No. 16-143-LPS |
| MUSIC EXPRESS/EAST, INC., | : |
| Defendant. | : |

| | |
|---|---|
| MUSIC EXPRESS, INC., | : |
| Counterclaim-Plaintiff, | : |
| v. | : |
| LIVERY COACH SOLUTIONS, L.L.C., DAVID HIRSCH, and JACOB BOWMAN, | : |
| Counterclaim-Defendants. | : |

Peter Murphy, ECKERT SEAMANS CHERIN & MELLOTT, LLC, Wilmington, DE,
Gary Schildhorn and Heather Olson, ECKERT SEAMANS CHERIN & MELLOTT, LLC, Philadelphia, PA

    Attorneys for Plaintiff and Counterclaim-Defendants.

Jack B. Blumenfeld and Michael J. Flynn, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE,
Timothy B. Yoo, BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG, & RHOW P.C., Los Angeles, CA,

    Attorneys for Defendant/Counterclaim-Plaintiff.

## **MEMORANDUM OPINION**

March 29, 2017
Wilmington, Delaware


**STARK, U.S. District Judge:**

## I. INTRODUCTION

On March 7, 2016, Livery Coach Solutions, L.L.C. ("Livery") filed a breach of contract suit against Music Express/East, Inc. ("Music Express"). (D.I. 1) On May 9, 2016, Music Express[1] answered Livery's complaint and brought counterclaims of fraudulent inducement, negligent misrepresentation, breach of contract, federal unfair competition, violation of the Delaware Deceptive Trade Practices Act, and revocation of acceptance against Livery, Livery President David Hirsch ("Hirsch"), and Livery Director of Support Jacob Bowman ("Bowman") (collectively, the "Counterclaim-Defendants"). (D.I. 5) On May 31, 2016, Counterclaim-Defendants filed the pending Motion to Dismiss, seeking to dismiss all but the breach of contract counterclaims under Federal Rule of Civil Procedure 12(b)(6). (D.I. 8)

## II. BACKGROUND

Music Express provides chauffeured ground transportation in the United States, servicing more than 600 rides on a daily basis. (D.I. 5 (Counterclaims, hereinafter, "D.I. 5") at ¶ 11) Livery develops software solutions for the limousine industry, such as limousine reservation, billing, and dispatch management software. (D.I. 1 at ¶ 9; D.I. 5 at ¶ 14-15) Livery offers two versions of its software, the older "Classic" version and the newer ".Net" version, named respectively solely for purposes of this motion. (D.I. 5 at ¶¶ 19-20, D.I. 9 at 5 n.1)

Music Express and Livery – through Hirsch and Bowman – began conversations about Livery's software in February 2015. (D.I. 5 at ¶¶ 15-16) The parties met frequently, as often as

---

[1]Defendant Music Express/East, Inc. was not a party to the contract that is the subject of Livery's complaint. The correct party is Music Express, Inc.

1

twice a week, to discuss Music Express' software needs and to view demonstrations of the Livery software. (*Id.* at ¶ 17) Throughout these meetings, the parties discussed the differences between Livery's two software versions, which Livery maintained was "primarily aesthetic." (D.I. 5 at ¶ 20) Furthermore, during one software demonstration, Livery told Music Express it was being shown the .Net version, but Music Express maintains it was in fact shown the older Classic version. (*Id.* at ¶ 19) Livery assured Music Express that it would receive both versions of the software and that it would be able to take the software "live" by September 1, 2015. (*Id.* at ¶¶ 19, 21) Livery also provided Music Express with a list of companies that were purportedly operating Livery's software and encouraged Music Express to check those references. (*Id.* at ¶ 22) Eventually, on June 16, 2015, the parties entered into an End User Software License Agreement and Software Maintenance Agreement (collectively, the "Agreement"). (D.I. 1 at ¶¶ 1, 6; D.I. 5 at ¶ 32)

The parties agree that Livery delivered the software in August 2015, but Music Express alleges that (1) it only received the .Net version, not the Classic version which it had been shown and on which it had relied in entering the Agreement, and (2) the .Net version was an untested beta version of the software, containing programming bugs, and not operable as a commercially viable solution. (D.I. 5 at ¶¶ 23, 34; D.I. 1 at ¶ 11) Music Express argues that Livery repeatedly misrepresented the software capability throughout the parties' meetings leading up to the Agreement. (D.I. 5 at ¶¶ 18-32) For example, in addition to misrepresenting which version Music Express was shown and which version it would receive, Livery represented that: its software could integrate seamlessly with Music Express' accounting/financial management software, Livery's system would accommodate Music Express' account number convention, an

2

auto-billing feature was already operational on Livery's software, and Livery would provide a team of "17 programers" for technical support. (*Id.* at ¶¶ 24, 26, 27 30) Music Express maintains that each of these representations induced it to enter into the Agreement with Livery, but none of them turned out to be true. (*Id.* at ¶¶ 24-32, 34)

Ultimately, Music Express claims that Livery pulled a "bait and switch" by showing them the Classic version, misrepresenting its capabilities, and thereafter delivering the unworkable .Net version. (*Id.* at ¶¶ 23, 34) Music Express was not able to take the software "live" until September 6, 2015 and, even then, the program operated too slowly and experienced numerous issues, requiring 110 revisions between September 2015 and February 2016. (*Id.* at ¶¶ 34-38) These defects resulted in, "among other things: (1) countess broken customer invoices; (2) broken credit card files; and (3) missing invoices altogether," eroding Music Express' customers' confidence and goodwill, and requiring Music Express employees to work around-the-clock for weeks to address the various software problems. (*Id.* at ¶¶ 39-40) Further, Livery never provided adequate technical support, in part because Livery support teams were "too busy re-writing the software for the .Net platform." (*Id.* at ¶¶ 46-47) Music Express thereafter requested the Classic version – which it believed it had originally contracted to receive – in place of the unworkable .Net version, but Livery refused to provide it, stating that the two versions were "foundationally incompatible" and could not be switched. (*Id.* at ¶¶ 51-52)

In February 2016, Music Express notified Livery that it was terminating the Agreement, effective immediately, and that, in any event, the agreement was not valid because it had been improperly obtained. (*Id.* at ¶ 56) Music Express only made two payments before terminating the Agreement, leading Livery to sue for breach of contract on March 7, 2016 (D.I. 1 at ¶¶ 14-

15), and Music Express to countersue on May 9, 2016 (D.I. 5).

## III. LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiffs claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion*

4

*Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## IV. DISCUSSION

### A. Fraudulent Inducement and Negligent Misrepresentation

Music Express' First and Second Claims for Relief allege Fraudulent Inducement and Negligent Misrepresentation based on Livery's various representations (made through Hirsch and Bowman) leading up to the Agreement, that Livery knew were false – or that Livery made recklessly without regard for their truth – and that Music Express reasonably relied on in executing the Agreement. (D.I. 5 at ¶¶ 61-76) Counterclaim-Defendants assert that both claims are barred by two doctrines: the "gist of the action" doctrine and the economic loss rule. (D.I. 9 at 8)

The gist of the action doctrine is a common law theory "designed to maintain the conceptual distinction between breach of contract claims and tort claims." *Frank C. Pollara Group, LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 186 (3d Cir. 2015) (quoting *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)). It precludes tort suits for mere contractual breaches, requiring a plaintiff to point to independent events giving rise to the tort. *See id.* The doctrine does not preclude a breach of contract from *ever* giving rise to an actionable tort, but it does require that "the wrong ascribed to defendant must be the gist of the action, the contract being collateral." *Pediatrix Screening, Inc. v. TeleChem Intern., Inc.*, 602 F.3d 541, 548 (2010).

5

Counterclaim-Defendants argue that the dispute between Livery and Music Express is a breach of contract at its core, amounting to "nothing more than a simple dispute between a seller and [a] disappointed customer." (D.I. 9 at 9) Counterclaim-Defendants assert that Music Express' claims for fraudulent inducement and negligent misrepresentation merely revolve around Music Express' view that the software failed to conform to Music Express' specifications, an issue that is in dispute in the breach of contract claims. (*Id.* at 10)

Music Express responds[2] that Counterclaim-Defendants breached a duty "separate and distinct" from the contractual duties that arose from the Agreement. (D.I. 10 at 9) Music Express insists that Livery, Hirsch, and Bowman's misrepresentations "were in breach of a duty not to commit intentional (or negligent) torts imposed by society." (*Id.* at 10) Because each of the recognized misrepresentations occurred *prior* to the signing of the contract, rather than during the performance of the contract or in contravention of a duty created by it, Music Express contends the gist of the action doctrine cannot bar its claims. (*Id.* at 11)

The Court finds Music Express' claims of fraudulent inducement and negligent misrepresentation are not barred, per se, by the gist of the action doctrine. However, because application of the gist of the action doctrine turns on the particulars, the Court reviews each

---

[2]Music Express also contends that the gist of the action doctrine is unrecognized in Delaware. (D.I. 10 at 7) While Delaware courts have not specifically adopted the "gist of the action" doctrine, Delaware has recognized the general notion behind the doctrine: namely, "[a]s a general rule under Delaware law, where an action is based entirely on a breach of terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort." *Greenstar, LLC v. Heller*, 934 F. Supp. 2d 672, 696 (D. Del. 2013); *see also Kuroda v. SPJS Holdings LLC*, 971 A.2d 872, 971 (Del. Ch. 2009) (finding that "in order to assert a tort claim along with a contract claim, the plaintiff must generally allege that the defendant violated an independent legal duty, apart from the duty imposed by contract").

6

claim of misrepresentation individually, and finds that only two may support a valid tort claim. *See Frank C. Pollara Group,* 784 F.3d at 186 ("[A]pplication of this doctrine frequently requires courts to engage in a factually intensive inquiry as to the nature of a plaintiff's claims.") (internal quotation marks omitted).

Music Express bases its claims of fraudulent inducement and negligent misrepresentation on the same seven alleged misrepresentations by Counterclaim-Defendants. (D.I. 5 at ¶¶ 62-63, 71-72) These are the representations, made by Livery through Hirsch and Bowman, that: (1) Music Express would receive the Classic version of the software; (2) Livery would be prepared to take the software live by early September 2015; (3) several other companies were operating on the very same Livery software that Music Express would receive; (4) Livery software could integrate seamlessly with Music Express' accounting/financial management software; (5) Livery's system would accommodate Music Express' account number convention; (6) Livery's auto-billing feature was already operational on its software; and (7) Livery's "Livery to Livery" functionality would permit Music Express to transmit data seamlessly between users of the Livery software. (*Id.*)

Only representations (1) and (3) can support Music Express' tort claims. These are misrepresentations as to which version of the software Livery would be delivering (.Net instead of Classic) and as to whether other companies were supposedly using that same version. Music Express has stated a plausible claim that, in making these misrepresentations, Livery violated a societal duty not to make false statements and defraud others. *See Greenstar,* 934 F. Supp. 2d at 696 ("Claims for fraud can coexist with claims for breach of contract where a defendant committed intentional fraud, or acted with an illicit state of mind, in the sense that the Seller

knew that the representation was false and either communicated it to the Buyer directly itself or knew that the Company had.") (internal quotation marks omitted). These representations do not relate to Livery's contractual duty to deliver the software "free from defects that will substantially and materially affect its performance." (D.I. 1-3 at 1, Exhibit A, Section 12.01 "Performance Warranty") Instead, they "involve either a past or contemporaneous fact [the representation that other companies used the same version] or a future event [the representation that Music Express would receive the Classic version] that falsely implies an existing fact." *Funari v. Wallpang, Inc.*, 2014 WL 1678419, at *8 (Del. Super. Ct. Apr. 16, 2014). Counterclaim-Defendants' conduct in making these misrepresentations is, thus, separate and distinct from the conduct that allegedly caused the breach – delivering defective software unable to function within a commercially reasonable time. (D.I. 5 at ¶ 79) Claims based on these misrepresentations are not, therefore, barred by the gist of the action doctrine, and Music Express' claims of fraudulent inducement and negligent misrepresentation are not precluded.

By contrast, misrepresentations (2) and (4) through (7) all relate to Livery's contractual duty to deliver software free from defects. These representations were essentially incorporated into the terms of the Agreement through Livery's warranty to deliver functional software. The "heart" of these claims is that Counterclaim-Defendants delivered an unworkable product that did not meet Music Express' expectations. These representations cannot form the basis for claims of fraudulent inducement or negligent misrepresentation and are barred by the gist of the action doctrine.

Application of the economic loss doctrine leads to the same conclusion. This doctrine is rooted in products liability law, but has been expanded to other contexts. *See Christiana Marine*

8

*Servs. Corp. v. Texaco Fuel and Marine Mktg. Inc.*, 2002 WL 1335360 (Del. Super. Ct. June 13, 2002). There are exceptions to the economic loss rule however, including claims of fraud, as well as other intentional torts. *See Commonwealth Constr. Co. v. Endecon, Inc.*, 2009 WL 609426, *5 (Del. Super. Ct. Mar. 9, 2009) (recognizing trend to exclude intentional torts, including fraudulent misrepresentation, from economic loss doctrine). Furthermore, Delaware recognizes an exception stated in the Restatement (Second) of Torts, which provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Restatement (Second) of Torts* § 522; *see also Del. Art. Mus. v. Ann Beha Architects, Inc.*, 2007 WL 2601472, at * 2 (D. Del. Sept. 11, 2007). Courts applying this exception have found that it requires the showing of two elements: (1) the plaintiff must show that the defendant supplied information to the plaintiff for use in business transactions with third parties; and (2) the defendant must be in the business of supplying such information. *See Christiana Marine Servs. Corp.*, 2002 WL 1335360, at *5-6.

Counterclaim-Defendants argue that Music Express' losses "are purely economic." (D.I. 9 at 10) Music Express responds that the economic loss rule "does not preclude tort claims directed at breaches of non-contractual duties." (D.I. 10 at 12) Instead, courts have repeatedly found fraud and intentional misrepresentation claims to be recognized exceptions to the rule. (*Id.*)

The Court agrees that Music Express' claims of fraudulent inducement and negligent

9

misrepresentation both fall within the exceptions to the economic loss doctrine and are, therefore, not precluded. As addressed above, intentional torts such as fraudulent inducement have been carved out of the economic loss doctrine. *See Commonwealth Constr. Co.* 2009 WL 609426, at *5; *Brasby v. Morris*, 2007 WL 949485, at *7 (Del. Super. Ct. Mar. 29, 2007); *see also Cavi v. Evolving Sys., Inc.*, 2017 WL 658470, at *7 (D. Del. Feb. 17, 2017) (stating that "[a]llegations of fraud that go directly to the inducement of the contract, rather than its performance, present a viable claim" not barred by economic loss rule). Music Express has also satisfied both elements of the Restatement exception for its negligent misrepresentation claim. Music Express has adequately pled that Counterclaim-Defendants supplied information to it for use in business transactions with third parties (i.e., Music Express showed that Counterclaim-Defendants made various representations about the capability of Livery's software, which was to be used by Music Express in business transactions with its clients). Music Express also adequately pled that Livery is in the business of providing software solutions for limousine companies and, therefore, in the business of supplying information about the software Music Express contracted to use in dealings with its clients.

Therefore, the Court will deny Counterclaim-Defendants' motion to dismiss Music Express' claims (based on misrepresentations numbered (1) and (3) above) to the extent the motion is based on application of the "gist of the action" or economic loss doctrines.[3]

---

[3]Counterclaim-Defendants also argue that because the gist of the action is a breach of contract matter, and "Delaware law clearly holds that officers of a corporation are not liable on corporate contracts as long as they do not purport to bind themselves individually," claims against Hirsch and Bowman individually must be dismissed. (D.I. 9 at 10 n.3) Because the Court finds Music Express' claims are not barred by the gist of the action doctrine, this argument is unavailing.

10

### B. Federal Unfair Competition

Music Express' Fourth[4] Claim for Relief alleges that Livery's "bait and switch" of demonstrating the Classic version and later delivering only the .Net version constitutes false or misleading description and/or false or misleading representation and unfair competition under the Lanham Act, codified at 15 U.S.C. § 1125. (D.I. 5 at ¶ 83) The Lanham Act protects persons who are injured as a result of false association and/or false advertising. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014).

Counterclaim-Defendants argue that Music Express has failed to state a claim for relief under Rule 12(b)(6) because the Supreme Court precluded this type of claim as a matter of law. (D.I. 9 at 11-12) Specifically, the Court in *Lexmark* stated, "[a] consumer who is hoodwinked into purchasing a disappointing product . . . cannot invoke the protection of the Lanham Act ." *Lexmark*, 134 S. Ct. at 1390. Further, to show proximate cause, a plaintiff suing under the Lanham Act "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and ***that occurs when deception of consumers causes them to withhold trade from plaintiff.***" *Id.* at 1391 (emphasis added). Counterclaim-Defendants argue that Music Express is barred from pursuing its claim because it states precisely the facts the Supreme Court barred in *Lexmark:* that "Music Express was allegedly 'hoodwinked' by Livery (and its officers and directors) when Livery delivered the current, '.Net' platform software to Music Express rather than the obsolete, 'Classic' version." (D.I. 9 at 12) Counterclaim-Defendants also argue that there is no proximate causal link between the alleged

---

[4]Livery has not moved to dismiss Music Express's Third Claim for Relief, brought solely against Livery, which alleges breach of contract.

11

misrepresentations and Music Express' injury because the statements made during the course of the parties' private dealings cannot be said to constitute "advertising" that deceived Music Express' consumers and caused them to withhold trade from Music Express. (*Id.* at 12-13) Music Express' response is to request leave to amend its claim. (D.I. 10 at 20)

The Court agrees with Counterclaim-Defendants. Not only did the Supreme Court refuse to apply the Lanham Act to the "hoodwinked consumer," but it also explicitly stated that "[e]ven a business misled by a supplier into purchasing an inferior product is, like consumers generally, not under the Act's aegis." *Lexmark*, 134 S. Ct. at 1390. Further, the Court agrees that Livery's statements ***to Music Express*** cannot constitute "advertising" ***to Music Express' customers*** that caused them to withhold trade from Music Express. Therefore, even taking Music Express' well-pleaded allegations as true, Music Express has failed to state a claim on which relief may be granted.

Based on the same reasoning, it would be futile to allow Music Express to amend its claim. Rule 15(a) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been filed, a party may amend its pleading "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." The decision to grant or deny leave to amend lies within the discretion of the Court. In exercising this discretion, the Court should consider such factors as "undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d at 1434 (internal citations omitted). An amendment is futile if it is frivolous, fails to state a claim upon which relief can be granted, or "advances a claim or defense that is legally insufficient on its face." *Koken v. GPC Int'l, Inc.*, 443 F. Supp. 2d 631, 634 (D. Del. 2006). Here, a Lanham

Act claim would not survive a Rule 12(b)(6) motion even if pled with more particularity because it has been expressly barred by *Lexmark*. Therefore, any amendment would be futile.

Accordingly, the Court will grant Counterclaim-Defendants' motion to dismiss this claim.

### C. Delaware Deceptive Trade Practices Act

Music Express' Fifth Claim for Relief alleges that Livery violated the Delaware Deceptive Trade Practices Act, codified in 6 Del. C. § 2532, which prohibits unlawful and deceptive trade practices, including falsely representing that goods and services are of a particular standard, quality or grade, when they are not. (D.I. 5 at ¶ 86) Counterclaim-Defendants contend that Music Express lacks standing to assert this claim. (D.I. 9 at 13-14)

To have standing, the Delaware Supreme Court has stated that a litigant must have "a business or trade interest at stake which is the subject of interference by the unfair or deceptive trade practices of another," adding that this interference must be "with the ***horizontal relationships*** between various business interests." *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 70 (Del. 1993). A horizontal business relationship is one that "exists between at least two businesses on the same market level, because they manufacture similar products in the same geographic region, or are direct competitors." *Chase Bank USA, N.A. v. Hess*, 2013 WL 867542, at *5 (D. Del. Mar. 7, 2013), *report and recommendation adopted*, 2013 WL 5314706 (D. Del. Sept. 20, 2013) (internal citations omitted).

No such horizontal relationship exists here because Music Express and Livery (and further, Music Express and Hirsch and/or Bowman) are not direct competitors and do not manufacture similar products. Because there is no potential of interference with a horizontal relationship here, Music Express lacks standing to pursue a claim under the Delaware Deceptive

13

Trade Practices Act. In addition, any amendment here would be futile because no amount of particularity could cure this defect in standing.

Counterclaim-Defendants' motion to dismiss this claim will, therefore, be granted.

### D. Revocation of Acceptance

In its Sixth Claim for Relief, brought solely against Livery, Music Express argues that if it is found to have accepted the software, the Court should find it revoked that acceptance under the Uniform Commercial Code. (D.I. 5 at ¶¶ 90-92) Music Express argues that the non-conformity of the software could not have been reasonably discovered at the time Livery tendered delivery and, had Music Express known the software was non-confirming, it would not have accepted it. (*Id.*) In support of this argument, Music Express points to both a Notice of Termination ("Notice") it sent Livery – asserting that the notice is "tantamount to a notice of revocation in these circumstances" – and the filing of this lawsuit. (*Id.* at ¶ 94; D.I. 10 at 18)

Livery responds that "termination" and "revocation" are "inherently different and provide for different remedies." (D.I. 9 at 15) While termination only eliminates the prospective obligations of the parties, revocation restores the parties to the position they were in before the contract existed. (*Id.* (citing 6 Del. C. § 1-101, *et seq.*)) Livery argues that Music Express only provided notice of its intent to ***terminate*** the Agreement, but never notified Livery of its intent to ***revoke*** the Agreement. (*Id.* at 15-16) Because revocation is not effective until notice has been received, Livery argues the claim must fail as a matter of law. (*Id.*) Furthermore, Livery argues that Music Express' actions were inconsistent with revocation since it continued to use the software for weeks after the purported revocation. (*Id.* at 16 n.8)

This issue does not present a meritorious basis on which to grant a motion to dismiss.

14

The Court has not had the opportunity to evaluate the Notice, nor have the parties taken any discovery relating to it (or the intent behind it). Additionally, should the Notice be found to constitute a notice of revocation, the ultimate question of whether Music Express provided it in a timely manner is a question of fact, not amenable to resolution on the pending motion to dismiss. *See Mercedes-Benz of N. Am. Inc. v. Norman Gershman's Things to Wear, Inc.*, 596 A.2d 1358, 1363 (Del. 1991) ("Whether a notice of revocation of acceptance is given within a 'reasonable time' under 6 Del. C. § 2-608(2) is, as a general rule, a question of fact for the jury.").

The Court will, therefore, deny Counterclaim-Defendants' motion to dismiss Music Express' claim of revocation.

### E. Damages

Lastly, Counterclaim-Defendants contest Music Express' request for recovery, arguing that under the limited liability provision of the Agreement, Music Express is "barred from recovering any damages in excess of certain fees paid to Livery." (D.I. 9 at 16) Counterclaim-Defendants thus assert that Music Express' damages cannot exceed $62,715.51 – the amount Music Express paid Livery in connection with the Agreement. (*Id.* at 17) Music Express responds that the enforceability of the limited liability clause presents a factual inquiry and cannot be resolved on a motion to dismiss. (D.I. 10 at 13) Further, Music Express argues, because the remedy provisions of the Agreement fail of their essential purpose, the limited liability clauses should not be enforced. (*Id.* at 14) Counterclaim-Defendants rebut that the matter is ripe for a motion to dismiss because any factors the Court would need to evaluate to determine the liability provision's enforceability are all already known. (D.I. 11 at 5-6) (arguing that both parties are sophisticated business entities, Agreement itself is only eight pages in

15

length, and in-house counsel reviewed Agreement for Music Express)

The Court finds this matter premature without additional discovery, especially in light of claims that Music Express was fraudulently induced into entering the Agreement. *See J.A. Jones Const. Co. v. Ciy of Dover*, 372 A.2d 540, 553 (Del. Super. Ct. 1977) ("It has been repeatedly recognized that the issue of whether limitation provisions are enforceable under the contractual relations of the parties and the nature of the contractual performance are matters which generally should not be decided on the pleadings or on summary judgment."); *see also Hampton v. Warren-Wolfe Assocs., Inc.*, 2004 WL 838847 at *3 (Del. Super. Ct. Mar. 19, 2004) (stating that "[c]ontract clauses which exonerate a party from the consequences of its own actions are disfavored by the Courts" and denying summary judgment as to limitation of liability clause where questions remained for trier of fact).[5]

Counterclaim-Defendants' motion with respect to damages will be denied.

## IV.   CONCLUSION

For the reasons explained above, Counterclaim-Defendants' motion to dismiss will be granted in part and denied in part. An appropriate Order follows.

---

[5] Delaware courts have sometimes been able to resolve disputes as to enforceability of a limited liability clause on summary judgment. *See Column Form. Tech., Inc. v. Caraustar Indus., Inc.*, 2014 WL 2895507, at *5 (Del. Super. Ct. June 10, 2014); *RHA Constr., Inc. v. Scott Eng'g*, 2013 WL 3884937, at *8 (Del. Super. Ct. July 24, 2013); *Donegal Mut. Ins. Co. v. Tri-Plex Sec. Alarm Sys.*, 622 A.2d 1086, 1090 (Del. Super. Ct. 1992). Here, the record is not as developed as in those other cases. *See, e.g., Donegal Mut. Ins. Co.*, 622 A.2d at 1089 ("If the interrogatories had not been answered, it may have been inappropriate for the Court to grant summary judgment.")